## Binkie Appeal

*David E. Cohen*, for appellant.
*Joseph R. Rygiel*, for Commonwealth.

MUNSON, J., August 1, 1962.—This is an appeal by Charles David Binkie from an order of the Secretary of Revenue suspending his motor vehicle operator's license for four months for reckless driving.

### Findings of Fact

1. On June 4, 1960, at about 9:25 a.m., Charles David Binkie while operating a two-tone red and white 1955 Chevrolet in an easterly direction on the Penn-

sylvania Turnpike in West Pennsboro Township, Cumberland County, Pennsylvania, was stopped by a State Policeman and charged with reckless driving. Appellant was charged with a summary offense under section 1001 of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1001 (1), and although he maintained his innocence, duly paid a fine and costs. Subsequently the Secretary of Revenue, following a departmental hearing, suspended his operator's license for a period of four months.

2. In the area of the alleged violation the Pennsylvania Turnpike consists of four lanes of concrete divided by an earthen medial strip ten feet wide into two lanes for eastbound and two lanes for westbound traffic. The weather was clear, visibility good, the roadway dry, and traffic was moderate.

3. On the morning in question, State Police Trooper Rickert was patrolling the Pennsylvania Turnpike in a westerly direction some short distance west of the two easternmost tunnels, when he observed a 1955 or 1956 model, two-tone red and white Chevrolet, operated by a white-shirted or jacketed driver, traveling eastwardly at a high rate of speed. When he conveniently could, the trooper made a U-turn preparatory to following the vehicle, but as it was by then out of sight, he radioed to Trooper Kreider, who was patrolling east of the two tunnels, to be on the lookout for such a vehicle. Trooper Rickert was unable to secure the vehicle's license number and he never saw the vehicle thereafter. Upon receiving the radio message, Trooper Kreider stationed himself at the eastern exit of the tunnels. He presently saw a vehicle proceeding out of the tunnel and traveling at a normal speed, this vehicle fitting the description of the car he was looking for. Kreider *immediately* crossed to the eastbound traffic lanes, *but he failed to see the described vehicle*. Kreider proceeded eastwardly at a high rate of speed for 11 miles when he

saw at a distance of one-half mile or so ahead of him a vehicle similar to the one he had seen coming out of the tunnel. Six miles farther east Kreider stopped appellant while he was operating a 1955 Chevrolet. Appellant was accompanied by one Ina Mae Knight, whom he has since married.

4. The only basis for the charge of reckless driving brought against appellant was excessive speed. Appellant's speed was never clocked by the State Policeman, and it is not contended that appellant did not have his car under control. No accident or collision was involved.

5. Appellant is a bakery truck driver-salesman, and suspension of his operator's license would result in economic hardship. There is no evidence that appellant has ever had any prior vehicle code violations or license suspensions.

6. There was no adequate proof that appellant was driving recklessly. Under the evidence the suspension of his operator's license is not merited.

7. Appellant is not subject to suspension of his operator's license.

### Discussion

The Act of April 29, 1959, P. L. 58, sec. 620, 75 PS §620, requires the court of common pleas to hear de novo appeals from license suspension orders of the Secretary of Revenue. It is the duty of the court to determine independently the merit of the suspension and make an independent appraisal of the facts: Commonwealth v. Wagner, 364 Pa. 566.

The arresting officer testified that he stationed himself at the eastern exit of the tunnel in question and when he saw a vehicle fitting the description given to him by radio emerging from the tunnel at a normal rate of speed, he *immediately* crossed to the eastbound lanes and proceeded after it. He further testified that although he immediately accelerated the speed of his patrol car to 110 or more miles per hour, he was unable

to see the vehicle he was looking for until he had traveled 11 miles at this high rate of speed. He then identified the vehicle even though he was at least one-half mile behind it. A natural question presents itself as to where this unidentified vehicle could have gone in these 11 miles or how it could have disappeared completely for that distance.

Initially we have also the question of identity. It is a matter of common knowledge that the automobile industry sold more automobiles in 1955 than in any previous year in history. There are literally thousands of 1955 model red and white Chevrolets upon the highways of America. There is no credible evidence whatever in this case that the Chevrolet first observed on the western approach to the tunnel in question was the same vehicle seen emerging from the eastern exit by Trooper Kreider. Neither is there any credible evidence that the vehicle seen emerging from the tunnel by Trooper Kreider was the same vehicle he stopped some 18 miles eastwardly.

It is true that the State Policeman testified he followed a vehicle which turned out to be appellant's for a distance of about six miles before he was able to stop it. However, it taxes our credulity that a police car could maintain a constant speed of from 110 to 120 miles per hour for a distance of 18 miles on a highway as heavily traveled as the turnpike, as the officer testified. Moreover, the officer first emphatically testified that his patrol car was a 1959 model Ford. Yet he presented a certificate of speedometer accuracy for a Plymouth automobile, and upon being questioned concerning the discrepancy, he then changed his testimony by stating that his patrol car in reality was a 1960 model Plymouth.

As opposed to this evidence appellant unequivocally testified that at no time prior to his being arrested was he driving at a speed in excess of 65 or 70 miles per

hour. The turnpike speed limit is 65 miles per hour. Miss Knight, his passenger in the vehicle and who is now his wife, corroborated appellant's testimony that he was not driving at any excessive speeds. Both appellant and his wife deny that he was in any way driving recklessly or carelessly. Moreover, appellant was driving to Harrisburg for the purpose of attending a wedding, and he wanted to arrive at his destination by 1:00 p.m. He was arrested at 9:25 a.m., only a comparatively few miles away from his destination. With several hours remaining in which to traverse a rather short distance, we are unable to comprehend what any driver's purpose or need would be to drive at a speed of 110 or 120 miles per hour.

The evidence in respect to speed and reckless driving in this case is directly in conflict. It is the Commonwealth's duty to sustain its position by a preponderance of the evidence. Under all the circumstances of this unique case, we conclude that the Commonwealth has failed to establish by a preponderance of the credible evidence that appellant was guilty of reckless driving under section 1001 of The Vehicle Code. The evidence was certainly no more than equally balanced and we think the appeal should be sustained. Cf. Handwerk Automobile License Case, 348 Pa. 263.

### Conclusions of Law

1. The order of the Secretary of Revenue suspending appellant's operator's license should be reversed and the license reinstated.

2. Appellant should pay the costs.

### Order

And now, August 1, 1962, after hearing and consideration, the court having examined into the facts of the case and determined whether appellant's operator's license should be suspended, the appeal is sustained and the order of the Secretary of Revenue

suspending appellant's motor vehicle operator's license is hereby reversed, and it is directed that his license be reinstated. Costs to be paid by appellant.